UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 22-CV-23392-SEITZ

CONTINENTAL DIVIDE INSURANCE COMPANY,
        Plaintiff,
v.

RUMBA TOURS, LLC; JORGE REYES; and LUISA CAMPOS;
        Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Continental Divide Insurance Co.'s Motion for Summary Judgment [DE 68] seeking a declaration that it has no duty to defend Defendant Rumba Tours in an underlying state action[1] pursuant to either a Workers' Compensation or Employee Indemnification exclusion in the applicable insurance policy. DE 1. Plaintiff maintains that Defendant Jorge Reyes, the plaintiff in the state action, was an employee at the time of the incident. *Id.* Defendants counter that Defendant Reyes was a temporary worker within the meaning of the policy or an independent contractor under Florida law and as such entitled to coverage.[2] DE 69 at 4. The Court has reviewed the Motion [DE 68], Defendants' Response in Opposition [DE 69], Plaintiff's Reply [DE 74], the accompanying statements of material facts [DE 67; DE 70; DE 73], the deposition transcripts, and the record. Plaintiff's Motion for Summary Judgment must be denied

---

[1] The State Court Action, *Jorge Reyes and Luisa Campos v. Rumba Tours, LLC,* Case No. 2022-008503-CA-01, is a personal injury action brought by Defendant Reyes and his wife, Defendant Luisa Campos, that alleges Defendant Reyes was injured when he fell off a bus that Defendant Rumba Tours owned and operated. DE 1-1.

[2] Although Defendants' Answers do not raise the issue of independent contractor as an affirmative defense [DE 52; DE 54], the principal thrust of their opposition to the Motion is that Defendant Reyes was an independent contractor. Because the Plaintiff has responded to this new affirmative defense assertion in its reply, the Court will treat this as an additional affirmative defense.

1

because there are disputed issues of material fact as to Defendant Reyes' employment status as defined by Florida precedent and workers' compensation law.

## I. UNDISPUTED FACTS

### a. The Parties

Plaintiff Continental Divide is Colorado-based insurance company. DE 29 ¶ 4. Defendant Rumba Tours[3] is a transport entertainment business that provides tours of the city of Miami and is owned by Luis Paublini,[4] who is not a party to this action. Paublini Dep. at 10:4; 14:11-15. For every tour booked, Defendant Rumba Tours assigned two or three employees to the tour: a driver, a host, and maybe an assistant, depending on the occasion. *Id.* at 19:9-15. Rumba Tours did not carry workers' compensation coverage. *Id.* at 88:2-6. Defendant Jorge Reyes is married to Mr. Paublini's mother, Defendant Luisa Campos. *Id.* at 40:1. The individuals deposed in this case were Mr. Paublini, as Rumba Tours' corporate representative, Defendant Reyes, Defendant Campos, and Henry Sisto, the individual driving the Rumba Tours bus at the time of Defendant Reyes' April 16, 2022 incident. DE 63; DE 64; DE 65; DE 66.

### b. The Policy

Plaintiff Continental Divide issued an insurance policy to Rumba Tours effective from September 25, 2021 until September 25, 2022. DE 29 at 45. The two relevant exclusions are: first, legal obligations which should be covered by a workers' compensation policy ("the Worker's Compensation exclusion"), and second, bodily injuries to an

---

[3] The entity named in Plaintiff's Complaint, Rumba Tours, LLC, dissolved in February 2023 due to lack of profit. Paublini Dep. at 10:18-24. Mr. Paublini now operates his business as "Rumba Tours Agency, LLC," which is not a party to this action. *Id.* at 9:1-4.

[4] Rumba Tours, LLC was owned in equal parts by Mr. Paublini, Sebastian Ortega, and Cesar Paublini, Jr. Paublini Dep. at 11:23-24. Mr. Ortega and Mr. Paublini, Jr. were not deposed in this matter.

"employee" and spouses of that employee arising out of and in the course of employment by the insured or performing the duties related to the conduct of the insured's business ("the Employee Indemnification exclusion"). *Id.* at 52-53. The relevant policy definitions are "employee," "leased worker," and "temporary worker." The policy states "an 'employee' includes a 'leased worker,' [and] does not include a 'temporary worker.'" *Id.* at 60. A "leased worker" is "a person leased to [the insured] by a labor leasing firm under an agreement between [the insured] and the labor leasing firm to perform duties related to the conduct of [the insured's] business." *Id.* A leased worker is not a "temporary worker." The policy defines a "temporary worker" as "a person furnished to [the insured] to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." *Id.* at 61. The policy does not at any point mention or make a distinction for independent contractors.

c. **Defendant Reyes' Role & Duties within Rumba Tours**

Defendant Reyes began working for Rumba Tours sometime in 2020 to fill in as a "lot manager." Paublini Dep. at 54:20-55:4. His duties included cleaning the buses and taking out the garbage. *Id.* at 59:3-5. Defendant Reyes did not fill out an application before beginning his employment, but Rumba Tours kept a personnel file for him. *Id.* at 86:12-17; Reyes Dep. at 32:2-4. All drivers and hosts, including Defendant Reyes, were 1099 employees. Paublini Dep. at 19:6-7. Only Mr. Paublini and Mr. Ortega were W-2 workers. *Id.* at 21:23-24. Throughout the two years of his employment, Defendant Reyes was regularly paid $300.00 per week regardless of the work he performed. *Id.* at 42:6; 46:16-18; Reyes Dep. at 29:1-3. Beginning on January 17, 2022, Defendant Reyes was paid via direct deposit. Paublini Dep. at 41:3-8.

With regards to cleaning the buses, Defendant Reyes used some of his own supplies, such as gloves, boots, water buckets, and a blower to blow trash off the floor. *Id.* at 45:5-7;

Campos Dep. at 88:22-89:7. As to the cost of the supplies, a text message exchange between Defendant Reyes and Mr. Paublini shows at least one instance of Defendant Reyes using a company credit card to purchase cleaning supplies. Paublini Dep. at 63:14-19. However, Defendant Campos testified that Rumba Tours "mainly" covered the costs of the cleaning supplies, which were stored on the Rumba Tours lot. Campos Dep. at 87:19-24. Mr. Paublini or Mr. Ortega would clean the buses if Defendant Reyes was unable to. Paublini Dep. at 44:3-6; 93:2-5. Defendant Reyes did not have a fixed schedule, instead he could choose when he wanted to clean the buses, which would end up being about three times a week. Paublini Dep. at 43:7; Campos Dep. at 93:1-8. However, Defendant Reyes typically asked Mr. Paublini via WhatsApp for the upcoming week's tour schedule so Defendant Reyes could determine his schedule based on the tours. Paublini Dep. at 43:16-23; 52:16-21.

Eventually, in addition to cleaning the buses, Defendant Reyes began "hosting" booked tours, but he never drove one of the buses or trolleys. Reyes Dep. at 34:7-13; Paublini Dep. at 74:5-7. As a host, Defendant Reyes would accompany the driver to pick up the guests, tend to them by providing ice and cups, and pick up trash left by the guests. Reyes Dep. at 34:14-19; Paublini Dep. at 81:8-10. At times, Mr. Paublini asked Defendant Reyes to address a particular issue, such as garbage left on the bus. Paublini Dep. at 62:15-63:8; 66:1-3. Unlike Defendant Reyes' cleaning responsibilities, for which he did not receive any training, he did receive training for hosting. Reyes Dep. at 39:1-6. Defendant Reyes' participation in the booked tours depended on his availability. Paublini Dep. at 42:12-14. Initially, his participation as a host was sporadic but ultimately Defendant Reyes hosted a tour every week. Campos Dep. at 82:18-25. Defendant Reyes was not required to wear a uniform while hosting. Paublini Dep. at 74:3-4. If Defendant Reyes hosted a tour, he was paid extra. *Id.* at 50:8-10.

4

In addition to his work for Rumba Tours, Defendant Reyes also drove for Uber, offered disc-jockey ("DJ") services,[5] and occasionally helped his wife with her catering business. *Id.* at 50:19-51:1; Campos Dep. at 20:6-8. Defendant Reyes owned DJ equipment, and at least one time used his DJ equipment at a Rumba Tours event in which one of the buses was stationary. Paublini Dep. at 51:4-19. Defendant never operated under his own business entity for his DJ services, or any other service. Campos Dep. at 93:13-16. Defendant Reyes never worked as a DJ while assisting with a tour. Paublini Dep. at 51:21-23.

### d. The Incident

On the evening of April 16, 2022, Defendant Reyes was assigned to host a tour alongside Henry Sisto, a Rumba Tours driver. *Id.* at 26:15-18; 28:12-14. Defendant Reyes provided Mr. Sisto with the address for the pickup location. Sisto Dep. at 13: 2-8. Defendant Reyes and Mr. Sisto were scheduled to pick up a group at the Florida International University Campus located in West Miami and drop them off at a popular bar in Downtown Miami. Paublini Dep. at 31:23-33:1. The reservation was for a one-way trip. *Id.* at 33:11.

Defendant Reyes' incident occurred after he and Mr. Sisto dropped off the group at the designated location. *Id.* at 38:4-5. Mr. Sisto and Defendant Reyes headed straight back to the Rumba Tours parking lot. Sisto Dep. at 17:19-25. While the bus was still in motion, Defendant Reyes began picking up garbage inside the front area of the bus next to the driver and fell by the front bus steps. *Id.* at 19:1-8; 21:1-9. The force from the fall resulted in the bus doors opening, and as such Defendant Reyes fell out of the bus on to the road. *Id.* at 24:10-15; 25:2-15. Defendant Reyes was taken to the hospital in an ambulance following the incident. *Id.* at 27:8-20. The incident appears to have affected Defendant Reyes'

---

[5] Defendant Campos testified that after 2018, Defendant Reyes' DJ services became less frequent—dwindling from about once a week to about three times a month. Campos Dep. at 28:7-21.

5

memory, as he does not remember the particulars of the incident. *Id.* at 83:20-24. Defendant Reyes did not return to work following the incident. *Id.* at 47:21-24.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

#### a. There is a disputed issue of material fact as to Defendant Reyes' employment status.

There is no dispute that Defendant Reyes' incident "arose out of" his employment as he was cleaning the bus[6] as it returned to the Rumba Tours lot following a tour. Thus, the coverage issue depends on whether Defendant Reyes is an excluded employee or a covered independent contractor. The policy does not define independent contractors. However, when the policy is silent, Florida courts treat independent contractors and employees as two distinct designations. See *National Surety Corp. v. Windham*, 74 So.2d 549 (Fla. 1954) *abrogated on different grounds by Griffin v. Speidel*, 179 So. 2d 569 (Fla. 1965).

Plaintiff asserts it is entitled to summary judgment because Defendant Reyes qualifies as an employee and his sole remedy for job-related injuries is under Florida workers' compensation law, and the policy specifically excludes coverage for employees under either the Workers' Compensation or Employee Indemnification exclusion.[7] Plaintiff has the burden of showing Defendant Reyes is an employee when analyzing the ten factors set out in *Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966). Per the Florida workers' compensation statute, Defendant Reyes has the burden of showing that he satisfies at least four of the six criteria defining an independent contractor under Fla. Stat. § 440.02(15)(d)(1)(a) or any of the seven criteria listed in Fla. Stat. § 440.02(15)(d)(1)(b). Fla. Stat. § 440.02(15)(d)(1)(c).

---

[6] Similarly, there is no dispute that Rumba Tours owned and operated the bus Mr. Sisto was driving. Paublini Dep. at 14:23; 29:12.

[7] The employment relationship is not destroyed by an employer's failure to obtain workers' compensation coverage. *Fla. Ins. Guar. Ass'n, Inc. v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997). It is undisputed that Rumba Tours did not carry workers' compensation coverage. Paublini Dep. at 88:2-6.

The record shows that Defendant Reyes does not meet at least five of the six criteria of the statute's subsection (a). In fact, as to the first, second, third, fourth, and sixth criteria: there is no record evidence to suggest that Defendant Reyes maintained a separate business with his own equipment or facilities, applied for a federal employment identification number, held a bank account in the name of a business entity, received compensation on a "competitive-bid" basis or for a set of tasks as defined by a contractual agreement, or was compensated through a business entity. As to the fifth criteria, whether Defendant Reyes could perform these duties for a different entity, there is no evidence that Defendant Reyes did so or was inclined to do so. Even though he could hypothetically satisfy this criteria, subsection (a) requires Defendant Reyes meet at least four of the six. As such, Defendant Reyes does not meet the definition of independent contractor under subsection (a).

However, an individual may still be categorized as an independent contractor if the nature of the situation satisfies *any* of the additional seven criteria listed in the statute's subsection (b).[8] In looking at the record, only three subsection (b) criteria are relevant to this case: (I) the extent of control over the means of work, (II) who incurred the principal expenses, and (III) who was responsible for satisfactory completion of the job.[9] These issues mirror three relevant *Cantor* factors— specifically the extent of control the employer exercises over the details of the work, whether the employer or the workman supplied the

---

[8] The record evidence does not support a finding that Defendant Reyes could satisfy the remaining four subsection (b) criteria for independent contractor status. Those ask whether the individual: (IV) receives compensation for work or services performed for a commission or on a per-job basis and not on any other basis; (V) may realize a profit or suffer a loss in connection with performing work or services; (VI) has continuing or recurring business liabilities or obligations; and (VII) whether the success or failure of the individual's business depends on the relationship of business receipts to expenditures. Fla. Stat. § 440.02(15)(d)(1)(b).

[9] It is unclear what this factor means for distinguishing an independent contractor from an employee. Defendants state, without any legal or record support, that Defendant Reyes satisfies this criteria. For purposes of this Motion, the Court will consider this factor in its analysis.

instrumentalities of the job, and whether the parties believed they created a master-servant relationship. [10] *Cantor*, 184 So. 2d at 173. Defendants argue that the length of time factor under Cantor could weigh in favor of independent contractor status because he operated on an "as-needed" basis, however Defendant Reyes' two-year continuous employment with regular pay indicates otherwise.

The first disputed issue of material fact pertains to the extent of Rumba Tours' control over Defendant Reyes. Defendant Reyes was generally allowed to clean the buses on his own schedule. Reyes Dep. at 48:20-25. His schedule's flexibility could indicate that he was an independent contractor. However, Defendant Reyes frequently communicated with Mr. Paublini regarding the upcoming tour schedule and worked to ensure the buses were clean ahead of them. *Id.* at 42:21-25. As such, a reasonable jury could find that Rumba Tours exercised control over Defendant Reyes' schedule, as it depended on the booked tours. Further, Defendant Reyes did perform the tasks asked of him by Mr. Paublini, such as taking the garbage out according to the timeframe Mr. Paublini communicated. *Id.* at 29:1-3. Also, there is evidence that Mr. Paublini provided at least some guidance to Defendant Reyes, as evinced by the text message exchange in which Mr. Paublini asked Defendant Reyes to clean a particular area of one of the buses. Paublini Dep. at 62:15-16. These text exchanges could indicate that Defendant Reyes and Mr. Paublini were "creating a relationship of master-servant."

---

[10] Defendants concede that four of the ten *Cantor* factors weigh in favor of finding Defendant Reyes was an employee, specifically: (b) whether or not the one employed is engaged in a distinct occupation or business; (d) the skill required in the particular occupation; (g) the method of payment, whether by time or by the job; (h) whether or not the work is a part of the regular business of the employer; and *Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966). Defendants also concede that two of the *Cantor* factors are not relevant in this case: (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; and (j) whether the principal is or is not in business. *Id.*

Next, there is a disputed issue of material fact regarding whether Defendant Reyes incurred expenses or supplied instrumentalities and tools to a degree which would support that he was an independent contractor and not an employee. Rumba Tours would reimburse Defendant Reyes for his supplies "sometimes," yet Defendant Reyes had some of his own supplies that he kept at home, such as brushes, cleaning liquids, gloves, and boots. Reyes Dep. at 44:2-5; Campos Dep. at 88:9-18. Mr. Paublini also testified that Defendant Reyes owned half of the supplies, while Rumba Tours owned the other half. Paublini Dep. at 45:1-3. From the conflicting record evidence, it is unclear which way the scale tips with regards to the factor of responsibility for business expenses. As such, this matter is best left for the jury.

Further, the parties disagree regarding who was responsible for the satisfactory completion of the job. Defendants conclusory state that Defendant Reyes was responsible for the completion of his work. DE 69 at 14. Plaintiff responds by stating there is no record evidence that Defendant Reyes was "responsible" for his work in a way that differentiated him from other employees. DE 74 at 6. The record evidence indicates that Defendant Reyes' primary duty was to clean of buses, but it also shows that Mr. Paublini or Mr. Ortega would fill in for him as necessary. The record is not clear as to how often Mr. Paublini or Mr. Ortega would fill in. The parties did not cite to case law analyzing this factor. If this matter proceeds to trial, the parties must first, provide the legal standard which would guide the jury's understanding of this issue in the jury instructions, and second, point to the facts in the record which support the parties' positions. Otherwise, this factor under subsection (b) will not be considered by the jury.

Finally, there is important evidence that suggests the parties intended to create a master-servant relationship, specifically that Defendant Reyes was paid $300 a week regardless of whether he cleaned the buses. Paublini Dep. at 42:9-17. Although the jury

10

can consider the fact that Defendant Reyes did not receive benefits as a factor weighing in favor of independent contractor status, the jury will be given the limiting instruction that an individual's tax status is not dispositive of his or her employment status under either *Cantor* or the workers' compensation statute. See *Roberts v. Gator Freightways, Inc.*, 538 So.2d, 55, 56-57 (Fla. 1st DCA 1989). The evidence that makes the master-servant relationship issue debatable is the fact that he had some control of his schedule, the fact that he could turn down hosting a tour and he covered at least some of the expenses for the cleaning.

It is unclear whether Defendants will meet their burden under the workers' compensation statute if this matter proceeds to trial. However, in considering the evidence and given that whether an employee-employer relationship exists is generally a question of fact left to the jury, a trier of fact should determine the weight and credibility of the parties' evidence and ultimately determine whether Defendant Reyes is an employee or independent contractor under either *Cantor* or Fla. Stat. § 440.02(15)(d)(1)(b). *Pate v. Gilmore*, 647 So. 2d 235, 236 (Fla. 1st DCA 1994).

### b. The insurance policy is not ambiguous.

Additionally, Defendants would like the Court to find coverage on a claimed ambiguity in the insurance policy because two other courts found similar language to be ambiguous with the context of the facts in each case. If a provision is ambiguous, the provision is strictly construed against the insurer and in favor of coverage. *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1227 (11th Cir. 2013) (citing to *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003)). Courts must enforce clear and unambiguous contract provisions. *Id.* (citing to *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). When interpretating an insurance policy, a court

11

should take the policy as a whole and strive to give every provision its full meaning and effect. *Id.* (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007)).

The plain language in the insurance policy in this case, however, does not reveal any ambiguity. Neither of the two cases Defendants cite are on point because the portions of the exclusions the trial courts found ambiguous in those cases are not at issue in this case. Here, nothing in the record suggests that Defendant Reyes was "furnished to" Rumba Tours by an agency, an entity, or an individual. As such, Defendants' reliance on the court's finding that the phrase "furnished to" was ambiguous in *National Indem. Co. of South v. Landscape Mgmt Co.*, 963 So. 2d 361, 363 (Fla. 3d DCA 2007) is misplaced. Also, the record does not support a finding that Defendant Reyes' work for Rumba Tours was either short-term or seasonal as to qualify as a temporary worker, given his more than two-year continuous employment. Paublini Dep. at 59:3-5; 47:21-24. Thus, the Court's holding in *International Ship Repair & Marine Services, Inc. v. Norther Assur. Co. of America*, 2011 WL 5877505, at *5 (M.D. Fla. 2011) that an ambiguity existed as to whether someone was a temporary worker because the job spanned a few months is not at issue here. Insurance policies must be interpreted according to the plain language of the policy, and a court should not strain itself to find an ambiguity within insurance policies. *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227-28 (11th Cir. 2005) (citing to *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). The Court will decline Defendants' invitation to do so. Based on the plain language of the policy and the record evidence of Defendant Reyes' two-year continuous employment, he was not a temporary worker. Thus, the temporary worker argument fails as a matter of law.

### c. Conclusion

While the Court has found that the insurance policy as to temporary worker is not ambiguous, there are disputed issues of material fact regarding whether Defendant Reyes is an employee or independent contractor. The factual disputes focus on the extent of control Rumba Tours exerted over Defendant Reyes, the degree to which Defendant Reyes incurred expenses, whether Defendant Reyes was solely responsible for the satisfactory completion of the work, and whether Defendant Reyes and Rumba Tours believed they created a "master-servant" relationship. Therefore, it is

ORDERED THAT Plaintiff's Motion for Summary Judgment [DE 68] is **DENIED**.

**DONE and ORDERED** at Miami, Florida, this 8th day of August, 2023.

PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

Cc: Counsel of Record